```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF OHIO
                   EASTERN DIVISION
```

Jeanette E. Rose,                :

     Plaintiff,           :

  v.                             :   Case No. 2:14-cv-1901
                                            CHIEF JUDGE EDMUND A. SARGUS, JR.
Commissioner of Social Security,
                                :   Magistrate Judge Kemp
     Defendant.           :

<u>REPORT AND RECOMMENDATION</u>

I. <u>Introduction</u>

    Plaintiff, Jeanette E. Rose, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for disabled widow's benefits and supplemental security income. Those applications were filed on May 19, 2011, and alleged that Plaintiff became disabled on January 1, 2010.

    After initial administrative denials of her claim, Plaintiff was given a hearing before an Administrative Law Judge on February 22, 2013. In a decision dated March 18, 2013, the ALJ denied benefits. That became the Commissioner's final decision on July 16, 2014, when the Appeals Council denied review.

    After Plaintiff filed this case, the Commissioner filed the administrative record on December 18, 2014. Plaintiff filed her statement of specific errors on January 23, 2015, to which the Commissioner responded on May 6, 2015. No reply brief was filed, and the case is now ready to decide.

II. <u>The Lay Testimony at the Administrative Hearing</u>

    Plaintiff, who was 52 years old at the time of the administrative hearing and who has an eighth grade education, testified as follows. Her testimony appears at pages 58-70 of the administrative record.

Plaintiff first testified that she had never worked. She said that her main physical problem was lower back pain, but she also had high blood pressure. She had trouble walking some days due to the pain, and usually needed to alternate every ten minutes between sitting and standing. She did not lie down every day to relieve pain, but did so most days. She could lift a gallon of milk.

Other problems which Plaintiff was experiencing included hand tremors and leg tremors. She sometimes had trouble navigating the three steps down from her home. Plaintiff said she could not bend over and touch either her knees or her toes, and at times she had problems balancing.

On a typical day, Plaintiff watched television, but still had to get up and down while doing so. She did socialize with her boyfriend and her family, but did not like being around a lot of people at once. She gets angry in a grocery store setting. With difficulty, she could dress herself. She did some cooking, dishes, and laundry, but her daughter helped with those chores as well. One of her medications, Flexeril, made her drowsy, and she did not take it every day.

Plaintiff also testified that her hands would go numb several times in a day. She had gone through physical therapy three times without relief. Similarly, she had had injections in her back which did not help. She had been told she was not a candidate for back surgery.

### III.  The Medical Records

The medical records in this case are found beginning on page 263 of the administrative record. The Court will summarize those records, as well as the opinions of the state agency reviewers, to the extent that they are pertinent to Plaintiff's statements of error.

An EMG study was done on September 22, 2010, based on

Plaintiff's report of numbness and tingling in both hands. The study was abnormal and showed evidence of bilateral mild to moderate median nerve neuropathy at the wrist. At that time, only conservative treatment was recommended. (Tr. 274). A diagnostic note from a nurse practitioner dated later that year shows a diagnosis of carpal tunnel syndrome and reported that Plaintiff was wearing splints. (Tr. 375). She was still reporting bilateral hand numbness in 2012 and had an MRI of the brain done that year for both that complaint and for leg tremors, which was read as unremarkable. (Tr. 507). Dr. Li, who ordered the MRI, did find diffusely increased muscular tone, deep tendon reflexes, and lower extremity tremors. (Tr. 528-29).

Plaintiff also had an MRI done of her lumbar spine in 2010. The results of that study showed disc dessication and degenerative changes at L5-S1 with disc bulge and foraminal narrowing, and bilateral facet arthopathy at L3-L4 and L4-L5. (Tr. 276-77). A 2012 MRI showed similar findings, and a cervical MRI done that year showed some degenerative changes, particularly at C6-C7. There are a large number of treatment notes from both doctors and nurse practitioners concerning Plaintiff's back pain; most show tenderness to palpation in the lumbar region but normal straight leg raising and normal range of motion.

Dr. Evans saw Plaintiff on March 15, 2011, after Plaintiff had undergone a series of epidural injections. The injections did not help alleviate Plaintiff's back pain. On examination, she had diffuse tenderness throughout the lumbar paraspinal musculature and restriction of her lumbar range of motion. She could squat, stand, and toe and heel walk without difficulty. Dr. Evans referred her to physical therapy. (Tr. 304). When seen again in July, 2011, Plaintiff reported that the therapy had not helped and that she continued to have sharp back pain radiating into her legs. Dr. Evans prescribed some medications

but otherwise noted a lack of further treatment options.  (Tr. 409).

   Dr. Briggs, a psychologist, conducted a consultative psychological evaluation on September 13, 2011.  Plaintiff told Dr. Briggs that she started having severe back pain in January, 2010, and that she had trouble sleeping and driving.  She also said she had asthma, depression, panic attacks, and difficulty being around people.  At that time, she was living in a home with her daughter and her daughter's fiancé.  She normally stayed in her room unless no one else was home, and she did not socialize with others.  She moved slowly during the evaluation and complained of pain.  Plaintiff reported and presented as clinically depressed, and her affect was contained and subdued.  She was also often overwhelmed with the daily demands of living and said she was "dysfunctional in every aspect of her existence."  Dr. Briggs diagnosed mood, anxiety, and personality disorders, and rated her GAF at 55.  He thought Plaintiff's prognosis was fair to good.  In terms of mental functioning, he viewed her as mildly cognitively impaired and as functionally impaired in the areas of maintaining attention and concentration, persistence, and pace, responding appropriately to others in a work setting, and dealing with work pressure.  He did not think she could "successfully participate within a stressful and highly demanding work force."  (Tr. 410-18).

   Plaintiff went through a functional capacity evaluation at Adena Rehabilitation on April 19, 2012.  The objective findings included some range of motion limitations in the trunk and hip area, and some difficulty squatting.  She could not lift frequently enough to elevate her heart rate.  She showed some reduced grip strength, primarily in the right hand.  She could sit for 45 minutes at a time and stand for half an hour at a time, and could sit for 67% of the work day and stand for 33%.

She could also lift, infrequently, up to 20 pounds, and could frequently reach overhead. The evaluator placed her in the sedentary strength range and she showed fair endurance. (Tr. 518-20).

In addition to these treatment and examination notes, there are opinions in the record from state agency reviewers. As far as Plaintiff's physical capacity is concerned, Dr. Mormol concluded that she could do light work with some limitations on climbing ramps and stairs (frequently), ladders, ropes, and scaffolds (never), stooping and crouching (occasionally), and limited or no exposure to environmental hazards of various sorts. (Tr. 112-14). A second reviewer, Dr. Gallagher, expressed exactly the same conclusions except that she added a manipulative limitation (only frequent gross manipulation) based on the evidence of cervical stenosis and bilateral carpal tunnel syndrome with mild to medium neuropathy in the wrists. (Tr. 127-30).

The first psychological reviewer, Dr. Lewin, found that Plaintiff had moderate limitations in her ability to carry out detailed instructions, to maintain attention and concentration, to deal with work stress, and to interact appropriately with the general public. She also limited Plaintiff to superficial interaction with co-workers and supervisors and thought Plaintiff was limited in her adaptation ability but could adapt to infrequent changes in the workplace and had sufficient concentration, persistence, and pace to complete 1-4 step tasks. (Tr. 114-16). The second reviewer, Dr. Hoyle, concurred exactly in this assessment.

### IV. The Vocational Testimony

Dr. Finch was the vocational expert in this case. His testimony begins on page 71 of the administrative record.

Dr. Finch was asked some questions about a hypothetical

person of Plaintiff's age, education, and work experience who could work at the light exertional level. The person could frequently climb ramps and stairs and occasionally stoop and crouch. The person could not climb ladders, ropes, and scaffolds and had to avoid concentrated exposure to humidity, fumes, odors, dust, gases and poor ventilation, as well as even moderate expose to hazards such as unprotected machinery and unprotected heights. The person would also be limited to the performance of simple, routine, repetitive tasks in a static work environment with static work processes and procedures and without strict time or production demands. Also, the person would have only occasional superficial contact with the general public. According to Dr. Finch, someone with those limitations could do jobs like garment folder, inspector packer, and mail clerk. He gave numbers for those jobs in the regional, State, and national economies. If that same individual could do gross manipulation only occasionally, however, he or she could not be employed.

Dr. Finch was then asked about someone who had the limitations to which Plaintiff testified, including the need to lie down for 20 minutes at a time once or twice in the work day and who could not do bilateral manipulation. He said that no jobs would be available for such a person. The same would be true for someone who could work only at the sedentary level and could do only occasional fine manipulation.

V. <u>The Administrative Law Judge's Decision</u>

The Administrative Law Judge's decision appears at pages 22-35 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the non-disability requirements for disabled widow's benefits through June 30, 2012. Next, he found that she had not engaged in substantial gainful activity since her alleged onset date of

January 1, 2010.

Going to the second step of the sequential evaluation process, the ALJ determined that Plaintiff had severe impairments including lumbar degenerative disc disease, tremors, hypertension, asthma, an affective disorder, an anxiety disorder, and a personality disorder.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the light exertional level and that she could frequently climb ramps and stairs, occasionally stoop and crouch, and never climb ladders, ropes, and scaffolds.  Also, she had to avoid concentrated exposure to humidity, fumes, odors, dust, gases and poor ventilation and even moderate exposure to hazards such as unprotected machinery and unprotected heights.  She also was limited to the performance of simple, routine, repetitive tasks requiring only occasional superficial contact with the general public.  Lastly, she could work only in a static work environment with static work processes and procedures which require no strict time or production.

The ALJ found that, with these restrictions, Plaintiff could do the three light jobs identified by the vocational expert - garment folder, inspector-packer, and mail clerk.  The ALJ further found that these jobs existed in significant numbers in the local, State, and national economies.  Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

### VI.  Plaintiff's Statement of Specific Errors

In her statement of specific errors, Plaintiff raises three issues.  She asserts that (1) the ALJ's functional capacity assessment is not supported by substantial evidence; (2) the

ALJ's credibility determination is not supported by substantial evidence; and (3) the ALJ's Step Five finding is not supported by substantial evidence. These issues are considered under the following legal standard.

Standard of Review. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

    A. Residual Functional Capacity Finding

In her first statement of error, Plaintiff contends that the ALJ did not account for her carpal tunnel syndrome even though, in Plaintiff's view, it was a severe impairment and caused

-8-

restrictions on her ability to manipulate objects in the workplace. She also argues that it was error for the ALJ to have assigned only little weight to the April 19, 2012 functional capacity evaluation and to have discounted Dr. Briggs' findings following the consultative psychological evaluation.

1.  <u>Carpal Tunnel Syndrome</u>

As to carpal tunnel syndrome, the ALJ did not mention that impairment in his very brief (one sentence) discussion of what severe impairments he found to exist (Tr. 38). He did note, in the section of the administrative decision devoted to the residual functional capacity finding, her complaint about numbness and tingling in her hands and the results of the EMG study, but made no other reference to any hand or wrist impairment and did not acknowledge the diagnosis of carpal tunnel syndrome. He gave great weight to the opinions of the state agency reviewers, however, purporting to adopt them in their entirety. However, as noted above, Dr. Gallagher found that Plaintiff had some limitation on her ability to perform gross manipulation bilaterally (she limited it to frequent as opposed to continuous), and that was not included in the ALJ's residual functional capacity assessment, nor did he ask the vocational expert about this specific limitation. Rather, he posed a question about someone limited to occasional gross manipulation (Tr. 72-73) and asked a follow-up question about someone with "no bilateral hand fine manipulation" (Tr. 73).

The Commissioner defends this portion of the ALJ's decision by arguing, first, that the ALJ considered carpal tunnel syndrome (or at least some hand or wrist impairment) throughout the sequential evaluation process, so that any error in not finding it to be a severe impairment was harmless. The Commissioner then asserts that Plaintiff has not otherwise identified how the ALJ failed to consider this impairment in reaching his RFC determination and that, due to the lack of specificity of

Plaintiff's argument, any other issues concerning hand or wrist impairments have been waived.

As this Court has repeatedly held, the harmless error analysis advanced by the Commissioner is appropriate only when the ALJ properly considered any functional limitations arising from non-severe impairments when crafting his residual functional capacity finding. See, e.g., Angelo v. Comm'r of Social Security, 2013 WL 765646, *6 (S.D. Ohio Feb. 28, 2013), adopted and affirmed 2013 WL 1344841 (S.D. Ohio Apr. 2, 2013) (finding no reversible error where "[t]he ALJ considered plaintiff's nonsevere impairments together with his severe impairments in the remaining steps of the sequential evaluation process and *properly* accounted for the limitations imposed by both") (emphasis supplied); see also Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987).  When no such limitations are incorporated into the RFC finding, however, this argument has no force.  Gerber v. Comm'r of Social Security, 2015 WL 5728561, *5 (S.D. Ohio Sept. 30, 2015).  The question then becomes whether the ALJ's decision not to find any limitations arising from the condition in question is supported by substantial evidence.

The Commissioner does not address that issue, but only makes a waiver argument.  The Court does not find any waiver here, however.  Plaintiff specifically asserts that she had functional limitations arising from carpal tunnel syndrome, or from whatever else was affecting her hands, and that if those limitations were severe enough, they could be disabling.

Further, the evidence about a hand or wrist impairment is essentially uncontradicted.  There is a positive EMG, a diagnosis of carpal tunnel syndrome, evidence that Plaintiff was wearing wrist splints, and evidence that she continued to report hand numbness to medical providers throughout the two years of medical records which are part of the file.  Dr. Gallagher identified

this as an impairment which caused functional limitations and explained why the record supported that finding.  Although Dr. Mormol did not make this finding, the ALJ does not appear to have recognized the conflict in these opinions, and he provided no explanation for rejecting Dr. Gallagher's finding.  Even had he done so explicitly, that would have been an unreasonable finding based on the uncontradicted medical record and the fact that Dr. Mormol's opinion, unlike Dr. Gallagher's, appears to overlook the evidence about this impairment.  Consequently, the Court concludes that a remand is necessary for further evaluation of the extent to which Plaintiff's manipulative limitations affected her ability to perform substantial gainful employment.

2.   The Functional Capacity Evaluation

The functional capacity evaluation, performed by Chris Banks, an OTR/L (Occupational Therapist, Registered, Licensed), is dated April 19, 2012.  It thus post-dates both state agency reviewers' opinions.  Plaintiff contends that the reasons given by the ALJ for essentially rejecting it are insufficient.  The Commissioner responds that the opinion is not, as the ALJ noted, from an acceptable medical source and that the ALJ had other good reasons, supported by the record, for giving it little weight.

The ALJ explained, first, that Mr. Banks' evaluation "is not entirely supported by the evidence of record." (Tr. 45).  He elaborated on that statement by saying that "[a]lthough the evidence supports the claimant has an impairment that could reasonably cause her symptoms, the severity and resultant functional limitations are at question."  Id.  The ALJ then noted that the evaluation had lasted just less than an hour, it was a one-time examination, and Mr. Banks was not an acceptable medical source.

The vagueness of the ALJ's reference to other medical evidence does not make it easy to determine what portion of the record the ALJ viewed as inconsistent with Mr. Banks' opinions.

-11-

However, when dealing with opinion evidence which is not from a treating source, and, in fact, not from an acceptable medical source - that is, what is usually described as "other opinion evidence" - there is no particular way in which an ALJ must articulate his rationale.  Consequently, although an ALJ must still evaluate "other opinion" evidence using much the same criteria which apply to the evaluation of medical opinions, see Social Security Ruling 06-03p, "there is a distinction between what an ALJ must consider and what an ALJ must cite to in a written decision."  Swartz v. Comm'r of Social Security, 2011 WL 4571877, *7 (S.D. Ohio Aug. 18, 2011).

    Here, there is a conflict in the record about Plaintiff's physical functional limitations.  The state agency reviewers, in particular, both of whom are medical sources, reached conclusions different from those expressed by Mr. Banks.  The medical records of diagnosis and treatment do not necessarily show that Plaintiff's impairments were so serious as to preclude her from performing a limited range of light work, and that is how the state agency reviewers interpreted them.  The absence of a treating relationship and a longitudinal treatment history are factors which SSR 06-03p makes relevant.  Under these circumstances, the ALJ was entitled to assign only some weight to Mr. Banks' opinion, and his failure to articulate his reasoning process in more detail cannot provide a basis for remand.

### 3. Dr. Briggs' Opinion

    The last part of this claim of error relates to the opinion provided by the consultative psychological examiner, Dr. Briggs.  Again, Plaintiff criticizes the ALJ's reasons for rejecting this opinion, arguing that Plaintiff cannot be faulted for not having sought out mental health treatment, and asserting that "the ALJ did not consider the severity of Plaintiff's mental limitations when he determined that Plaintiff could perform work."  As with the opinion expressed by Mr. Banks, the ALJ had no specific duty

to articulate his reasons, and the question is simply whether the administrative decision is sufficiently detailed to permit the Court to conclude that Dr. Briggs' opinion was considered, and whether the ALJ had a substantial basis for discounting it.

The ALJ properly noted that Dr. Briggs was not a treating source and conducted only a one-time evaluation.  The ALJ's observation that much of what Dr. Briggs relied upon was Plaintiff's own subjective report of symptoms is not a particularly persuasive rationale, given that most psychologists must rely to some extent on their patients' report of symptoms, but it is a factor to be considered, as is the fact that Plaintiff never sought psychological counseling or treatment and did not appear to be taking any medications for a psychological impairment.  Her other medical records carry no psychological diagnosis and do not report psychological symptoms other than some pre-operation anxiety.  Again, the state agency reviewers who had the benefit of Dr. Briggs' evaluation, and who clearly gave it some weight, indicating diagnoses of affective, anxiety, and personality disorders and imposing functional limitations arising from those disorders, still believed Plaintiff could work.  It is also important to note that Dr. Briggs' GAF rating is indicative of only moderate symptoms, and he did not explicitly say that Plaintiff could not function in any workplace, but rather that she was precluded from participating in a highly demanding and stressful workforce.  Given this state of the record, there is substantial evidence to support the ALJ's decision to give only some weight to Dr. Briggs' opinions and to adopt the views of the state agency psychologists.

B.  <u>Credibility Finding</u>

In her second statement of error, Plaintiff asserts that the ALJ failed properly to take into account her testimony about her physical limitations, and also did not factor into his residual functional capacity finding the side effects of her medication.

-13-

The Commissioner, citing to the fact that the courts give great deference to an ALJ's credibility finding, notes that the medical evidence of record contradicted Plaintiff's testimony about debilitating pain, as did Plaintiff's description of her activities of daily living, and that these factors fully support the ALJ's credibility finding.

A social security ALJ is not permitted to reject allegations of disabling symptoms, including pain, solely because objective medical evidence is lacking.  Rather, the ALJ must consider other evidence, including the claimant's daily activities, the duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, medication (including side effects), treatment or therapy, and any other pertinent factors. 20 C.F.R. §404.1529(c)(3).  Although the ALJ is given wide latitude to make determinations about a claimant's credibility, the ALJ is still required to provide an explanation of the reasons why a claimant is not considered to be entirely credible, and the Court may overturn the ALJ's credibility determination if the reasons given do not  have substantial support in the record. See, e.g. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994).

Here, the ALJ found Plaintiff's testimony not to be fully credible.  He explained that her report of disabling symptoms was not completely borne out by the objective medical evidence, including the absence of an antalgic gait, no sensory deficits, and reports that she was in no acute distress.  He also referred to the lack of mental health treatment despite testimony about debilitating psychological symptoms.  He did not explicitly consider her activities of daily living, however, and much of his rationale appears to be based on what he perceived to be a lack of objective verification of her pain.  And, as she also notes, he mentioned her testimony about side effects from medication but never explained why he did not credit that testimony.

The ALJ's credibility finding is not readily reviewable

-14-

here. Much of it consists of a recitation of the objective medical findings, with the primary reasons for rejecting the Plaintiff's testimony appearing to be the fact that she did not have an abnormal gait or walk with a cane. He did not appear to consider the consistency of her report of symptoms over time, the fact that she had tried many modalities of treatment, including three courses of physical therapy and steroid injections without getting any relief, and the fact that she took many medications for pain. Even with the deference given to the ALJ's credibility findings, this decision is too conclusory, and too focused on impermissible factors, to be fully credited. On remand, the ALJ should, consistent with Felisky, supra, examine the six factors listed in that decision, and evaluate Plaintiff's credibility in accordance with them.

### C. Step Five Finding

As her final claim of error, Plaintiff argues that the hypothetical question posed to Dr. Finch was incomplete because it did not incorporate the limitations which Plaintiff has identified in connection with her first claim of error. She notes that had such limitations been included, particularly relating to the frequency with which she could engage in gross manipulation, she would have been found to be disabled based upon Dr. Finch's response to questions incorporating those limitations. Based upon the Court's resolution of Plaintiff's first claim of error, no further discussion of this point is necessary.

### VII. Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained and that this case be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

### VIII. Procedure on Objections

If any party objects to this Report and Recommendation,

that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

    The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

                                                <u>/s/ Terence P. Kemp</u>
                                                United States Magistrate Judge